FILED

2011 Jan-05  AM 11:01
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

MARY JEAN TUCKER,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )   CIVIL ACTION NO. 09-G-1171-NE
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
            Defendant.               )
                                     )
                                     )

## MEMORANDUM OPINION

The plaintiff, Mary Jean Tucker, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  Bloodsworth, at 1239 (citations

omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)    whether the claimant is currently employed;

(2)    whether she has a severe impairment;

(3)    whether her impairment meets or equals one listed by the Secretary;

(4)    whether the claimant can perform her past work; and

(5)    whether the claimant is capable of performing any work in the national economy.

2

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

In the instant case,  ALJ Earl C. Cates, Jr., determined the plaintiff met the first two tests, but concluded that while she has an impairment or combination of impairments considered "severe," she did not suffer from a listed impairment.  In his decision, the ALJ found that the plaintiff has the residual functional capacity to perform light work with restrictions.  [R. 15].  Accordingly, the ALJ found the Plaintiff not to be disabled.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."

<u>McGregor v. Bowen</u>, 786 F.2d 1050, 1053 (11th Cir. 1986); <u>accord</u> <u>Elam v. Railroad</u>
<u>Retirement Bd.</u>, 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner
"must specify what weight is given to a treating physician's opinion and any reason for
giving it no weight ...."  <u>McGregor</u>, 786 F.2d at 1053.  If the Commissioner ignores or
fails to properly refute a treating physician's testimony, as a matter of law that testimony
must be accepted as true.  <u>McGregor</u>, 786 F.2d at 1053; <u>Elam</u>, 921 F.2d at 1216.  The
Commissioner's reasons for refusing to credit a claimant's treating physician must be
supported by substantial evidence.  <u>See</u> <u>McGregor</u>, 786 F.2d at 1054; <u>cf.</u> <u>Hale v. Bowen</u>,
831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a
claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

The plaintiff was 36 years old at the time of ALJ Earl C. Cates, Jr.'s
decision.  She had filed previous applications in February 2003 that were denied by an
ALJ and affirmed by the district court on October 17, 2006.  In this case, she amended her
alleged onset date from September 8, 2003, to March 12, 2005. [R. 51].  Her disability
insured status expired on December 31, 2008.

The ALJ found that the plaintiff has the following severe combination of
impairments: "Meniere's disease of the left ear, hearing loss in the left ear, hypertension,
diabetes mellitus, depression, anxiety, obesity, and history of craniotomy and shunting."
[R. 22].  Because "[t]reatment records show little if any ongoing complaints of anxiety or
depression," [R. 30] the ALJ found that the plaintiff's depression and anxiety result in

4

only "mild restriction of activities of daily living, mild difficulty in maintaining social functioning, and mild to moderate difficulties in maintaining concentration, persistence, or pace." [R. 24].   He found that her hypertension is "pretty well controlled," [R. 26] with "some dizziness" while she had "hypotension while her medications for high blood pressure were being adjusted." [R. 27].  The ALJ stated that he also considered the plaintiff's obesity in combination with her other impairments. [R. 30].  Based on the plaintiff's testimony that she can lift 10 to 15 pounds with each hand, sit for one to two hours at a time, stand for 15 to 20 minutes at a time, and that she can walk a block, the ALJ found that the plaintiff had the residual functional capacity to perform numerous jobs at the light and sedentary level. [R. 32].

On appeal, the plaintiff argues that the ALJ erred in failing to find that the plaintiff met Listing 2.07 for Meniere's disease.  This listing requires:

> ***Disturbance of labyrinthine-vestibular function*** (including Meniere's disease) characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
>
> A.    Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
>
> B.    Hearing loss established by audiometry.

At the hearing, the ALJ stated, "Okay, in order to find someone meets this listing, we'd probably have to have a medical opinion from a –." [R. 399].  The plaintiff's attorney began discussing test results from the plaintiff's treating otolaryngologist, Thomas L.

Eby, M.D[1].  The ALJ replied, "I suppose we could have the Claimant sent out on a

consultative exam and get an opinion from a doctor, whether she meets this listing." [R.

400].  The colloquy continued:

> ALJ:        Okay, well, you know, you're making arguments to the wrong
>             person –
>
> ATTY:       Okay.
>
> ALJ:        I mean, that's going to have to come from a medical
>             professional –
>
> ATTY:       All right, fine.
>
> ALJ:        – whether she meets a listing under this – one of these
>             categories, because I'm not expert on that, and we don't have
>             any opinions.  What I'm going to do, I'll go ahead with the
>             testimony –
>
> ATTY:       Yes, sir.
>
> ALJ:        – and I'll just take that advisement, and depending on how
>             severe her function is, and everything, we'll make a
>             Determination towards the end of the hearing whether we need
>             to send her on a consultive exam.

[R. 401].  At the end of the testimony, the following exchange occurred:

> ALJ:        Okay.  I don't think the Claimant meets a listing, you know,
>             from my observations, and from [what] I've read here.
>
> ATTY:       Yes, sir.

---

[1]  On January 23, 2006, it was Dr. Eby's opinion that the plaintiff "continues to be unable to work because of her symptoms." [R. 386].  The ALJ gave little weight to Dr. Eby's opinion.  The reasons given by the ALJ in discrediting Dr. Eby's opinion are not supported by substantial evidence, as discussed below.

ALJ:          We have no medical opinions that she has [sic] meets one, so, I
              don't think I'm going to have the Claimant send her [sic] on a
              consultative exam right now.  What I'm going to do is, I'm
              going to review this case before I make my final Decision.

CLMT:         Yes, sir.

ALJ:          And I want to thank you for coming in, and wish you the best
              of luck.

CLMT:         Thank you, thank you, sir.

ATTY:         Judge will you – if Your Honor's not going to send her to have
              the consultative exam, then we would wish –

ATTY:         Hold on just a second.  Excuse me.

[R. 429-430].  Then the hearing abruptly closed.

          In his decision, the ALJ addressed the plaintiff's wish for a consultative

exam or medical expert testimony:

> The claimant's attorney argues that listings 2.07 for Meniere's disease is met
> or equaled (Exhibit B10E).  He argued at the hearing that such a finding was
> supported by testing shown in Exhibit B11F, but he did not go any further in
> supporting this argument.  He was granted time after the hearing in which to
> obtain an examination in support of a listing, but reported in March 2007
> that the claimant was unable to afford it, and so requested a supplemental
> hearing with a medical expert for the express purpose of determining
> whether listing 2.07 was met and/or equaled (Exhibit B12E).  The
> undersigned replied that a decision would be issued on the record since there
> was no medical expert available to testify regarding Meniere's disease
> (Exhibit B13E).  Since then, the representative has submitted a report of
> examination by Dr. Benjamin McGrew, performed on January 19, 2007
> (Exhibit B16F).

[R. 23].  The ALJ's statement that the plaintiff's attorney "did not go any further in

supporting" the argument that the plaintiff meets or medically equals the listing is

7

disingenuous at best.  As seen from the hearing testimony as set out above, the plaintiff's

attorney clearly argued that the plaintiff should be sent for a consultative examination to

determine whether she meets or medically equals the listing. [R. 429-430].  Had the ALJ

not closed the hearing summarily, the plaintiff's attorney would have argued for the use

of a medical expert, as he had done earlier in the hearing. [R. 399-401].

       Indeed, at the beginning of the hearing, the ALJ admitted that the was not

qualified to determine whether the plaintiff meets or medically equals the listing. [R.

401].  Less than one hour later, the ALJ apparently thought he was sufficiently expert on

the subject to decide that no further consultative examination or medical expert was

necessary. [R. 429].  One important aspect of the Commissioners' duty to develop a fair

and complete record is his duty to recontact a claimant's treating physician[2].  The

Commissioner's regulations provide as follows:

> (e) Recontacting medical sources.  When the evidence we receive from your
> treating physician or psychologist or other medical source is inadequate for
> us to determine whether you are disabled, we will need additional
> information to reach a determination or a decision.  To obtain the
> information, we will take the following actions.

> > (1) We will first recontact your treating physician or psychologist or
> > other medical source to determine whether the additional information

---

[2]  The court also notes that the ALJ's conclusion that "there was no medical expert available to testify regarding Meniere's disease" is absurd. [R. 23].  The plaintiff's treating otolaryngologist, Dr. Eby, who holds the title of George W. Barber, Jr., Professor of Surgery at the Kirklin Otolaryngology/Head & Neck Surgery Clinic, performed extensive testing, and is more than qualified as a medical expert.  Because Dr. Eby is a specialist in the field of otolaryngology, his opinion is entitled to more weight in this area.  Presumably, the ALJ did not recontact Dr. Eby because of Dr. Eby's opinion that the plaintiff could not work because of her symptoms.

> we need is readily available.  We will seek additional evidence or
> clarification from your medical source when the report from your
> medical source contains a conflict or ambiguity that must be resolved,
> the report does not contain all the necessary information, or does not
> appear to be based on medically acceptable clinical and laboratory
> diagnostic techniques.  We may do this by requesting copies of your
> medical source's records, a new report, or a more detailed report from
> your medical source, including your treating source, or by telephoning
> your medical source.  In every instance where medical evidence is
> obtained over the telephone, the telephone report will be sent to the
> source for review, signature and return.

20 C.F.R. § 404.1512(e). Also, because of the Commissioner's duty to develop the

medical record fully and fairly "it is reversible error for an ALJ not to order a consultative

examination when such an evaluation is necessary for him to make an informed

decision." Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988)(quoting Reeves v.

Heckler, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (internal quotation marks omitted).  In

this case, the ALJ "succumbed to the [forbidden] temptation to play doctor and make [his]

own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).

Because the ALJ's reasons for rejecting the testimony of the plaintiff's treating physician,

Dr. Eby, are not supported by substantial evidence, as a matter of law, Dr. Eby's

testimony is taken as true.

## CONCLUSION

Therefore, the plaintiff is disabled within the meaning of the Social Security

Act.  An appropriate order remanding the action with instructions that the plaintiff be

awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 5 January 2011.

_____

UNITED STATES DISTRICT JUDGE

J. FOY GUIN, JR.